UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-60280-CIV-MARRA/JOHNSON

CLIFF ESTERSON and MARILYN ESTERSON, husband and wife, on behalf of their daughter, HOLLY ESTERSON,

Plaintiffs,

vs.

BROWARD COUNTY SHERIFF'S DEPARTMENT, SHERIFF AL LAMBERTI and DEPUTY LISA DAMIANO,

Defendants.
_______________________________________/

**OPINION AND ORDER**

This cause is before the Court upon Defendant Broward County Sheriff's Department's Motion for Summary Judgment (DE 56); Defendant Sheriff Al Lamberti's Motion for Summary Judgment (DE 57) and Defendant Deputy Lisa Damiano's Motion for Summary Judgment (DE 58). The motions are fully briefed and ripe for review. The Court has carefully considered the motions and is otherwise fully advised in the premises.

I. Background

The facts, as culled from affidavits, exhibits, depositions, answers, answers to interrogatories and reasonably inferred therefrom in the light most favorable for the plaintiffs, for the purpose of this motion, are as follows:[1]

[1] Plaintiffs did not controvert Defendants' statement of fact. Pursuant to Local Rule 7.5(d), "all material facts set forth in the movant's statement filed and supported as required by Local Rule 7.5(c) will be deemed admitted unless controverted by the opposing party's statement, provided that the Court finds that the movant's statement is supported by evidence in the record." S.D. Fla. L.R. 7.5(d).

On November 21, 2007, at approximately 7:30 a..m., Broward County Sheriff's Deputy Lisa Damiano went to a Weston, Florida neighborhood, in response to an anonymous complaint about an ongoing problem with a barking dog. (Dep. of L. Damiano at 44, 48-49, 58, Ex. A, attached to DE 55.) When Deputy Damiano arrived on the scene, she could hear a dog barking, and began to search the area for the dog in question. (Id. at 47.) She walked along the grassy area between two homes to investigate further and determine if the dog was in distress, if there was a crime occurring, or if someone was injured or in trouble. (Id. at 47-52.) As she walked toward the rear of Plaintiffs' ("the Estersons") house, a large dog exited the patio through an open door and charged at her in an "aggressive manner." (Id. at 53-54, 62-63, 65-66.) Deputy Damiano attempted to retreat, but feeling her life was threatened, shot at the Estersons' dog, Fred. (Id. at 65, 67-68.)

Fred then turned over and came charging at her a second time. (Id. at 68-70.) Deputy Damiano had nowhere to retreat. There was a lake behind her and she had on 20 pounds of gear. Thus, she fired at Fred a second time. (Id. at 84-85.) After the second shot, Fred slowly walked back to the patio. (Id. at 70.) At the time of the incident, Fred, a Dalmatian, weighed approximately 80 pounds. (Dep. of Cliff Esterson at 11, Ex. B, attached to DE 55.)

The Estersons had a "doggie door" from the home to the porch, and the doors to the porch were always left open, allowing Fred to come and go as he pleased. (Id. at 43.) In addition, Mr. and Mrs. Esterson testified that they utilized an "electronic" fence at the time. (Id. at 40-41; Dep. of Marilyn Esterson at 8-9, Ex. C, attached to DE 55.) There were no signs on the property, indicating that there was a dog on the premises. (Dep. of Marilyn Esterson at 33.) At the time of the incident, the Estersons were inside the home. (Id. at 8.) Prior to the incident, Fred was

barking at a duck in the lake behind the house and Mr. Esterson described Fred's bark as "territorial." (Dep. of C. Esterson at 59; Dep. of Holly Esterson at 37, Ex. D, attached to DE 55.)

The Broward Sheriff's Office has policies in place regarding the use of force, as well as policies with respect to animals.[2] (Sheriff's Policy Manual, Ex. E, attached to DE 55.) In accordance with those policies, Deputy Damiano immediately called for back up assistance, and asked for a supervisor to come to the scene. (Dep. of Damiano at 70-71) Deputy Damiano prepared an Event Report describing the incident. (Incident Report, Ex. F, attached to DE 55.) The matter was forwarded to the Shooting Review Board, which found that Deputy Damiano's shooting of Fred was proper under applicable Florida Statutes, in compliance with applicable policies and procedures, and was necessary and appropriate under the given facts, circumstances, or evidence presented. (June 12, 2008 Memo, Ex. G, attached to DE 55.) Deputy Damiano was found to have acted with reasonable force and the internal affairs matter was closed. (Dep. of Damiano at 73.) More than two years later, in January of 2010, Fred was euthanized at approximately 14 years of age. (Dep. of H. Esterson at 9-10, 20.)

Plaintiffs Cliff Esterson, Marilyn Esterson and, on behalf of their daughter, Holly Esterson ("Plaintiffs") have sued Defendants Broward County Sheriff's Department ("Sheriff's

---

[2] The specific portion of the policy manual addressing animals states in pertinent part:

F. Destruction of Animals

. . . .

2. If deputies discharge a firearm to kill a dangerous or badly injured animal, their immediate supervisor will be dispatched to the scene to evaluate the incident and initiate applicable action.

3. An Event Report (BSP RP #1) and Use of Force Report (BSO RP#16) on the incident will be completed. A copy of the Event Report and original Use of Force Report will be sent to Internal Affairs with the original Event Report going to Records.

Department"), Sheriff Al Lamberti ("the Sheriff") and Deputy Lisa Damiano ("Damiano"). Each Defendant has filed a separate motion for summary judgment. The Broward County Sheriff's Department seeks summary judgment on the ground that any claims brought against it are the functional equivalent of the claims brought against the Sheriff. The Sheriff moves for summary judgment on the section 1983 claims, asserting there is no respondent superior liability, no constitutional violation and no evidence to support a municipal liability claim. Finally, Deputy Damiano contends that Plaintiffs cannot state claims for the constitutional violations and, even if established, she would be entitled to qualified immunity for her actions.

II. Summary Judgment Standard

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the

nonmoving party's case. Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). According to the plain language of Fed. R. Civ. P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson, 477 U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." Anderson, 477 U.S. 242, 249-50.

III. Discussion

A. Sheriff's Department Motion for Summary Judgment

In moving for summary judgment, the Sheriff's Department states that all claims brought against it should be dismissed because the claims against the Sheriff in his official capacity are functionally equivalent to the claims brought against the Sheriff's Department. (DE 56 at 1-2.) Notably, Plaintiffs do not address this argument in their response memorandum. After careful consideration, the Court agrees with the Sheriff's Department that it is entitled to summary

judgment on this basis.

The controlling case on this point is Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991). In Busby, the Eleventh Circuit stated that "when an officer is sued under Section 1983 in his or her official capacity, the suit is simply another way of pleading an action against an entity of which an officer in an agent, [and thus], [s]uch suits against [the] municipal officer[ ] are . . . suits directly against the city that the officer represents." Busby, 931 F.2d at 776; see also Penley v. Eslinger, 605 F.3d 843, 854 (11th Cir. 2010) ("Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent.") (quoting Kentucky v. Graham, 473 U.S. 159, 165 (1985)). Based on this clear precedent, the Court grants the Sheriff's Department motion for summary judgment.

B. The Sheriff and Deputy Damiano's Motions for Summary Judgment

The Sheriff and Deputy Damiano seek summary judgment on the claims brought pursuant to section 1983. Section 1983 provides a cause of action for constitutional violations committed under color of state law. To prevail, a plaintiff must demonstrate both that a defendant deprived him of a right secured under the United States Constitution or federal law and that the deprivation occurred under color of state law.[3] Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir.1998); Hathcock v. Cohen, 547 F. Supp. 2d 1271, 1273 (S.D. Fla. 2008). A violation of the Fourth Amendment is cognizable under section 1983. Reyes v. Maschmeier, 446 F.3d 1199, 1202 (11th Cir. 2006); Hathcock, 547 F. Supp. 2d at 1273.

The Court observes that an individual's interest in his or her pet dog does fall within the

[3] There is no dispute that the Sheriff and Deputy Damiano were acting under color of state law. See Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001).

Fourth Amendment's protection against unreasonable seizures. See Altman v. City of High Point, 330 F.3d 194 (4th Cir. 2003) (privately owned pet dogs do qualify as property in that pets are "effects" under the seizure clause of the Fourth Amendment). As such, the killing of a person's pet dog by the government without the person's consent is also a seizure within the meaning of the Fourth Amendment. See Maldonado v. Fontanes, 568 F.3d 263, 270 (1st Cir. 2009); Viilo v. Eyre, 547 F.3d 707, 710 (7th Cir. 2008); Brown v. Muhlenberg Twp., 269 F.3d 205, 210 (3d Cir. 2001); Fuller v. Vines, 36 F.3d 65, 68 (9th Cir.1994), overruled on other grounds by Robinson v. Solano County, 278 F.3d 1007 (9th Cir. 2002); Lesher v. Reed, 12 F.3d 148, 150-51 (8th Cir.1994). Despite the fact that Fred was not killed by the shooting does not mean there was no seizure. Injury to a pet dog is the type of property damage that would be protected under the Fourth Amendment from an unreasonable seizure. See Pepper v. Village of Oak Park, 430 F.3d 805, 809 (7th Cir. 2005) (couch and television set are personal "effects" protected under Fourth Amendment); cf. San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose, 402 F.3d 962, 975 (9th Cir. 2005) (dogs are more than personal effects, "emotional attachment to a family's dog is not comparable to a possessory interest in furniture").

In deciding the question of reasonableness, the Eleventh Circuit has stated that reasonableness "is to be determined by 'balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.' " Gilmere v. City of Atlanta, 774 F.2d 1495, 1502 (11th Cir.1985) (quoting United States v. Place, 462 U.S. 696, 703 (1983)); see Penley v .Eslinger, 605 F.3d at 850 (same). This test requires "careful attention to the facts and circumstances of each particular case" and must be "judged from the perspective of a reasonable officer on the scene,

rather than with the 20/20 vision of hindsight." Graham v. Connor, 490 U.S. 386, 394 and 396 (1989). Courts must keep in mind that "police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." Id. at 396-97.

The record evidence undisputedly shows that, after being called to Plaintiffs' home, Deputy Damiano was confronted by an aggressive dog with a territorial bark. Upon seeing Deputy Damiano, Fred immediately charged at her. At that moment, she felt her life was threatened and even after shooting at Fred once, Fred charged at her again, forcing Deputy Damiano to shoot him once more. Deputy Damiano was unable to retreat, given the lake behind her and the 20 pounds of gear weighing her down. Significantly, there is no record evidence that Deputy Damiano did not follow proper procedure or that she acted aggressively towards Fred.[4] Based on this evidence, the Court finds that the seizure of Fred was not unreasonable and there is

---

[4] The Court is puzzled by Plaintiffs' assertion that "the Court must conclude that the shooting was done for no reason, since this is alleged in the Complaint, and Defendants offer no evidence to the contrary." (DE 62 at 2.) In fact, it is Plaintiffs who offer no evidence to challenge the evidence that Fred threatened Deputy Damiano's life. At the summary judgment stage, Plaintiffs can no longer rest on the allegations of the Complaint. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) ("In response to a summary judgment motion . . . the plaintiff can no longer rest on . . .'mere allegations,' [acceptable at the pleading stage] but must 'set forth' by affidavit or other evidence 'specific facts'. . . ."); cf. Evers v .General Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) (conclusory allegations without specific supporting facts have no probative value); see also Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.")

no basis to find a constitutional violation occurred.[5] See Bailey v. Schmidt, 239 Fed. App'x 306, 308-09 (8th Cir. 2007) (affirming summary judgment and stating that the "defendants did not act unreasonably in killing [the plaintiff's] dogs, given the uncontested evidence that all of the dogs either advanced on or acted aggressively toward the officers"); Warboys v. Proulx, 303 F. Supp. 2d 111, 117-18 (D. Conn. 2004) (the shooting and killing of a pit bill by the police officer was not an unreasonable seizure under Fourth Amendment when the dog weighed 90 to 100 pounds, was not restrained, and was rapidly approaching the officer).

Turning now to the issue of the Sheriff's liability, the Court begins by noting that a municipality cannot be liable for inadequate training under section 1983 unless the plaintiff has suffered a constitutional violation as a result of actions taken by an individual police officer. See Garczynski v. Bradshaw, 573 F.3d 1158, 1170 (11th Cir. 2009); Rooney v. Watson, 101 F.3d 1378, 1381 n.2 (11th Cir. 1996) (citing Roach v. City of Fredericktown, Mo., 882 F.2d 294, 297-98 (8th Cir. 1989)); see also Collins v. City of Harker Heights, 503 U.S. 115, 119 (1992) ("Although [section 1983] provides the citizen with an effective remedy against those abuses of state power that violate federal law, it does not provide a remedy for abuses that do not violate federal law."); City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (per curiam) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is

---

[5] Counts five and six of the Second Amended Complaint are labeled "negligent training" and "negligent supervision." Defendants previously moved to dismiss these claims to the extent they were state law claims, which the Court granted (DE 27). To the extent Plaintiffs now seek to advance these negligence claims pursuant to section 1983, those claims would necessarily fail. See Rooney v. Watson, 101 F.3d 1378, 1381 (11th Cir. 1996) (neither negligence or gross negligence rises to the level of a constitutional deprivation); Harris v. Coweta County, 21 F.3d 388, 392 (11th Cir. 1994) (negligence is not a constitutional tort under section 1983).

quite beside the point."). As discussed supra, the record evidence does not show a constitutional violation. For the purposes of a complete record, however, the Court will address the issue of the Sheriff's liability for his alleged failure to train his officers in the use of non-lethal force with respect to pets.

It is a well-settled principle that a municipality or county cannot be held liable under section 1983 for the acts of its employees on a theory of respondent superior. Scala v. City of Winter Park, 116 F.3d 1396, 1399 (11th Cir.1997) (citing Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978)). The City may only be held liable for the execution of an official government policy or custom. Quinn v. Monroe County, 330 F.3d 1320, 1325 (11th Cir. 2003); Scala, 116 F.3d at 1399. A failure to train adequately municipal employees constitutes an actionable policy for section 1983 purposes where the failure to train "reflects a 'deliberate indifference to the rights of persons with whom the police come into contact.'" Bruce v. Beary, 498 F.3d 1232, 1248-49 (11th Cir. 2007) (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 388, (1989) (footnote omitted) and citing Zatler v. Wainwright, 802 F.2d 397 (11th Cir.1986)); Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, 402 F.3d 1092, 1116 (11th Cir. 2005).

"To establish deliberate indifference, a plaintiff must present some evidence that [the county] knew of a need to train . . . in a particular area and [the county] made a deliberate choice not to take any action." Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998). In other words, forseeability is required and can be shown by "(1) subjective knowledge of a risk of serious harm; (2) disregard [of] that risk; (3) by conduct that is more than mere negligence." Cagle v. Sutherland, 334 F.3d 980, 987 (11th Cir. 2003). Without this notice, a county is not

liable as a matter of law for a failure to train. Id.; see also Church v. City of Huntsville, 30 F.3d 1332 (11th Cir. 1994) (reversing entry of preliminary injunction against the city holding the plaintiffs were not likely to succeed on the merits of their failure to train claim without proof that the city was aware of a prior incident in which constitutional rights were similarly violated); Wright v. Sheppard, 919 F.2d 665 (11th Cir. 1990) (the sheriff's department was not liable for a deputy act's when there was no evidence of widespread abuse to put the sheriff on notice for need for improved training); Popham v. City of Talladega, 908 F.2d 1561 (11th Cir. 1990) (affirming summary judgment finding no liability for failure to train when no pattern of incidents put the city on notice of a need to train); Brooks v. Scheib, 813 F.2d 1191 (11th Cir. 1987) (no notice of past police misconduct because the plaintiff did not demonstrate that the ten citizen complaints about the police had any merit).[6]

Here, there is no record evidence of a pattern of widespread abuse by police officers using lethal force against pets when non-lethal force was more appropriate. Nonetheless, Plaintiffs state that "Defendants attach a copy of another case involving the shooting of a dog" by a Broward County Sheriff Deputy, thereby demonstrating evidence of a pattern. (DE 62 at 4.) Presumably, Plaintiff is referring to Defendant's reliance on an order entered in case number 06-60741-CIV-COHN, in which Plaintiff sued, among others, the Broward County Sheriff for claims arising out of the alleged shooting death and injury by a sheriff deputy of the plaintiff's two dogs on November 6, 2004. (Orders in case no. 06-60741-CIV-COHN, attached to DE 57.) Of course, reliance on a court order discussing the allegations made in a complaint is not

[6] The high standard of proof for section 1983 plaintiffs is intentionally onerous to avoid imposing respondeat superior liability. Gold, 151 F.3d at 1351 n.10.

evidence for the purposes of summary judgment. See Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 999 (11th Cir. 1992) (summary judgment appropriate when the record contains no evidence by any person with personal knowledge); cf. Bald Mountain Park Ltd. v. Oliver, 863 F.2d 1560, 1563 (11th Cir. 1989) ("Mere conclusions and unsupported factual allegations are legally insufficient to create a dispute to defeat summary judgment."). Even assuming the Court considered these orders as evidence, which it cannot, "two incidents, occurring approximately [three years] apart are insufficient to establish a custom." Wakefield v. City of Pembroke Pines, 269 Fed. App'x 936, 940 (11th Cir. 2008) (incidents 13 months apart cannot establish custom); see also Church, 30 F.3d at 1345 ("Normally, random acts or isolated incidents are insufficient to establish a custom"). Finally, even though Plaintiffs complain that Defendants "offer no evidence of any training whatsoever regarding the use of non-lethal force in their encounter with dogs" (DE 62 at 4), without the existence of a pattern of widespread abuse by police officers, Plaintiffs are unable to defeat summary judgment against the Sheriff. See West v. Tillman, 496 F.3d 1321, 1331 (11th Cir. 2007) (affirming summary judgment and observing that even assuming the sheriff was aware the lack of sufficient training could result in mistakes, there was no evidence that the sheriff was aware of the need for a different kind of training); Cook, 402 F.3d at 1116-17 (finding the sheriff not liable for failure to train when the record is devoid of any evidence that the sheriff should have foreseen the prisoner's suicide).[7]

[7] While Gold noted that the United Supreme Court left open the possibility that the need to train could be "so obvious" to find a city liable without a pattern of prior incidents, that dicta used the example of the need to train police officers on the use of deadly force when the city provides its police with firearms to use in arresting fleeing felons. Gold, 151 F.3d at 1352. Gold was careful to state that the Supreme Court later observed that it was "simply hypothesizing." Id. In any event, the Court will not take it upon itself to extend the law in an area where the United States Supreme Court has not; namely, finding a sheriff liable without a pattern of prior incidents

Next, the Court will address Deputy Damiano's liability. In so doing, the Court must discuss the doctrine of qualified immunity. "[Q]ualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." Oliver v. Fiorino, 586 F.3d 898, 904 (11th Cir. 2009) (quoting McCullough v. Antolini, 559 F.3d 1201, 1205 (11th Cir. 2009)). In essence, qualified immunity affords "protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). "If the law did not put the officer on notice that his or her conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001). To invoke qualified immunity, the official first must establish that he or she was acting within the scope of his or her discretionary authority. Bates v. Harvey, 518 F.3d 1233, 1242 (2008). The burden then shifts to the plaintiff to overcome the defense of qualified immunity. Id. Thus, "[a] plaintiff who seeks to avoid summary judgment on the basis of qualified immunity must show not only that the officer violated her constitutional or statutory rights, but also that those rights were clearly established at the time the officer acted." Id. (citing Wilson v. Layne, 526 U.S. 603, 609 (1999)); see Douglas Asphalt Co. v. Qore, Inc., 541 F.3d 1269, 1273 (11th Cir. 2008) (same).

Here, there is no dispute that Deputy Damiano was acting in her capacity as a Broward County Sheriff's Deputy. Since Deputy Damiano was performing a discretionary function, the burden rests on Plaintiffs to demonstrate that Deputy Damiano violated clearly established

---

based on the failure to train officers in the use of non-lethal force against pets.

constitutional law. As discussed supra, Plaintiffs have failed to carry their burden of showing that Deputy Damiano's shooting of Fred was unreasonable and therefore violated a clearly established constitutional right. Without having establishing a predicate constitutional violation, Plaintiff's claim against Deputy Damiano fails. See Nash v. Palm Beach County School District, No. 08-80970-CIV, 2010 WL 3220191, at * 11 (S.D. Fla. Aug. 13, 2010).

That stated, the Court also notes that Plaintiffs have cited no caselaw that makes it sufficiently clear that the Fourth Amendment prohibits a sheriff's deputy from shooting an animal who, based on the undisputed record evidence, was threatening her life. See Bashir v. Rockdale County, Ga., 445 F.3d 1323, 1330 (11th Cir. 2006) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."); Spivey v. Elliott, 29 F.3d 1522, 1527 (11th Cir. 1994) ("The right must be particularized so that potential defendants are on notice that conduct in violation of that right is unlawful."). Instead, Plaintiffs point to caselaw addressing sovereign immunity, not qualified immunity. (DE 62 at 2 citing Wallace v. Dean, 3 So. 3d 1035 (Fla. 2009) and Labance v. Dawsy, 14 So. 3d 1256 (Fla. Dist. Ct. App. 2009).) Plaintiffs' failure to meet their burden on this point provides an additional basis to support a finding that qualified immunity is appropriate in this case.

With the dismissal of the federal claims, this Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the remaining state law claims.[8] This Court derives its jurisdictional authority over Plaintiff's federal claims from 28 U.S.C. § 1331, which provides that district courts have original jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Federal courts are given

---

[8] The remaining state law claims are trespass to chattel and conversion. (DE 30.)

the additional power to exercise supplemental jurisdiction over state law claims which "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, § 1367(c)(3) states that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... the district court has dismissed all claims over which it has original jurisdiction ...." Id. 28 U.S.C. § 1367(c)(3). Moreover, § 1367(c)(4) provides that the Court may decline to exercise supplemental jurisdiction over a state claim if "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4).

The Eleventh Circuit has explicitly advised that a district court is well within its discretion to dismiss state law claims once the basis for original federal court jurisdiction no longer exists. Nolin v. Isbell, 207 F.3d 1253, 1258 (11th Cir.2000); see also Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 951 n.26 (11th Cir.1997) ("After dismissing Panama's federal claims against the ... defendants, the district court correctly dismissed its remaining state law claims against these defendants"); Rice v. Branigar Org., Inc., 922 F.2d 788, 792 (11th Cir.1991) (recognizing that trial court's decision to exercise pendant jurisdiction over state law claims is discretionary). Given that the Court has granted summary judgment in favor of Defendants on the claims serving as the basis for original federal court jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. As such, these state law claims are dismissed without prejudice. Plaintiffs may pursue these state law claims in state court.

IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1) Defendant Broward County Sheriff's Department's Motion for Summary Judgment (DE 56) is **GRANTED.**

2) Defendant Sheriff Al Lamberti's Motion for Summary Judgment (DE 57) is **GRANTED.**

3) Defendant Deputy Lisa Damiano's Motion for Summary Judgment (DE 58) is **GRANTED.**

4) The Court will separately issue judgment for Defendants once the Court resolves Defendants' pending motion for Rule 11 sanctions.

**DONE and ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida this 4th day of November, 2010.

KENNETH A. MARRA
UNITED STATES DISTRICT JUDGE